UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>MICHAEL N. COOK,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.   13-30111-JBM<br>)<br>)<br>)<br>)<br>) |

## SENTENCING ORDER and OPINION

This is not a case involving the indictment of the court system of St. Clair County and its judiciary as being corrupt or lacking in integrity although some would be inclined to give it that spin.  Rather, this is simply a case, a tragic case at that, involving drugs and firearms by an otherwise law abiding citizen who happens to be a drug addict and a judge.  By all accounts Mr. Cook was a respected and effective judge who did his job well and handled the second highest number of cases in the circuit.  Because of his abilities, Mr. Cook was assigned to preside over the St. Clair County Drug Court.  However, this combination of addiction and judicial office is lethal to the integrity of any court system and surely injurious to a court system of which the public is, in the opinion of Chief Judge John Baricevic, already "skeptical".

> "The most basic function of a court system is to promote the rule of law.  Courts promote the rule of law by earning the respect of the people as the fair and dispassionate arbiters of society's laws and disputes, both large and small.  A court system cannot operate effectively without the respect of the people.  If the people do not respect the judiciary, the people will disobey its edicts, flout its commands [and distrust its decisions].  [Ultimately], the people will ignore the courts and resort to self-help, [the hand-maiden of chaos and anarchy].  Court personnel who cause people to question the integrity and impartiality of the judiciary therefore undermine the rule of law and disrupt the functioning of the courts."  *Unites States v. Gunby*, 112 F.3d 1493, 1502 (11th Cir. 1997).

1

In Count 1, Mr. Cook is charged as an addict under 18 U.S.C. §§ 922 (g)(3) and 924 (a)(2) who possessed a firearm, and is subject to a term of imprisonment up to 10 years and a fine up to $250,000.00.  In Count 2 he is charged under 21 U.S.C. § 844 (a) with "simple possession" of heroin for which the maximum term of imprisonment is only one year and a fine of not less than $1,000.00 up to $10,000.00.

Since there is no indication in the Presentence Report that the defendant possessed heroin for other than his personal use – that is, there is no indication that he ever distributed any of the drugs he purchased, the charge of simple possession and possession of a firearm[1] by an addict appear to be charges that fit the facts of his case; and the court has no basis to believe that they are the product of any machinations by persons of influence.  However, I must acknowledge the rarity of a case where the facts do not show some element of distribution which would then implicate the statutory mandatory minimums under 21 U.S.C. § 841 (b) which generate the severe sentences imposed in drug cases even those involving first time offenders.  This is so since, unlike the defendant, few addicts have the wherewithal to finance their drug use and resort to selling drugs to support their habit.

The lenient treatment of addicts under laws passed by Congress is carried over to the Federal Sentencing Guidelines which establish relative low base offense levels for both offenses of conviction, resulting in a combined total offense level of 8 after all adjustments.  With a criminal history category I, the guideline range of imprisonment is 0 to 6 months.  If Mr. Cook

---

[1] The Presentence Investigation Report reflects that Mr. Cook was only charged with "knowingly" possessing one of the forty-three assorted firearms collectively seized from his residence and family cabin, (that being a .50 caliber bolt action rifle), all of which, including the unknown number of firearms seized from his residence, reportedly were possessed solely for sporting and collection purposes; and the government did not find it readily provable that Cook had actual or constructive possession or knowledge of any high capacity semi-automatic firearms which would also affect the calculation of the offense level.

had been charged with distribution of heroin under 21 U.S.C. § 841(a) it is most likely that his combined total offense level would have been around 25 after all adjustments. His advisory guideline range would have been around 57 - 71 months imprisonment rather than the 0 – 6 months he now faces. Here again this result necessarily flows from the charges brought against him which as far as the Court can discern are appropriate under the facts of his case. I would expect that anyone with similar circumstances would also be similarly charged in the absence of any machinations.

The issue for sentencing is what is the appropriate sentence for someone like Mr. Cook with an advisory guideline range of 0 – 6 months. The Prosecution and Defendant thought 18 months, three times the upper-end of the range was 'sufficient but not greater than necessary' to comply with the purposes of sentencing set forth at 18 U.S.C. § 3553 (a)(2): those purposes are (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed education or vocational training; medical care, or other correctional treatment in the most effective manner.

The Court determined that an 18 month sentence was not sufficient and rejected the defendant's plea agreement in light of his status and various aggravating circumstances including the impact of his crimes on the public's confidence in the court system and disruption of governmental function under U.S.S.G. § 5K2.7. Now the matter is back before the Court.

The Court's disagreement stems from the failure of the negotiated disposition to give appropriate consideration to a variance-up from the guideline range under 18 U.S.C. § 3553(a)

and U.S.S.G. § 5K2.0 for four aggravating circumstances "of a kind not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that, [in order to advance the purposes of sentencing], should result in a sentence different from that described." 18 U.S.C. § 3553 (b)(1).  These circumstances are: (1) the fact that Mr. Cook was a long-time abuser of drugs, specifically cocaine, heroin, and prescription pain pills.  By his own admission, he abused heroin and/or prescription pain pills in a daily basis beginning as early as 2008, and abused cocaine two to three times per week beginning in 2009/2010.  He was an Associate Circuit Court Judge from 2007 to 2011, then a Circuit Court Judge from 2011 until his arrest for the instant offense.  Therefore his drug abuse closely mirrored his tenure on the bench.  Two issues arise from this circumstance of long-term drug abuse.  First, Cook had the financial ability, knowledge, and family support concerning the availability of substance abuse treatment including that offered and promoted by the Lawyer Assistance Program of the Illinois State Bar Association, but chose not to address the issue of his growing addiction.  Second, the guideline utilized in the determination of defendant's offense level does not take into account the amount of illegal drugs possessed by Cook throughout the years of drug usage.  Thus a defendant who possessed heroin on one occasion would receive the same offense level as a defendant who possessed heroin on multiple occasions.  In defendant's case, based on his own admissions, he would have had to possess illegal drugs on hundreds of occasions throughout his period of addiction.  The guideline for simple possession of heroin (U.S.S.G. § 2D2.1) does not take into consideration the number of times or the aggregate amount of heroin possessed.  He effectively gets the same sentence for his numerous purchases of heroin as a defendant who purchases it only once.  A conservative estimate of the aggregate amount of heroin he

purchased during the period of his use is 552 grams (1/8 oz. per week over 156 weeks). Conservatively speaking, this amount of heroin would likely produce a guideline range of imprisonment of 57 - 71 months. Thus this is a circumstance which the Sentencing Commission has not adequately taken into consideration.

(2) another relevant circumstance under U.S.S.G. § 5K2.0 is the loss of public confidence in the county's judicial system which was exacerbated by defendant's offense. According to newspaper articles and letters to the editor in the <u>Bellville News Democrat</u>, <u>Madison St. Clair Record</u>, and CBS News (stlouis.cbs.local.com), a loss of confidence in the St. Clair judiciary by at least some citizens is evident. As reported in the Presentence Investigation Report, "one letter to the editor began 'After so many of us have totally lost faith in the Illinois judiciary, based on the shenanigans in St. Clair County …' Paragraph 111 of the Presentence Report details the factual basis for this observation, the accuracy of which has not been challenged except with reference to the action of one citizens' group, Metro-East Citizens for Social and Economic Progress who describe themselves as "residents of St. Clair County who are working to restore judicial integrity." Defendant argues that this group is out of the mainstream and is not credible. Defendant's criticism of the group is tempered somewhat by the fact that a Belleville city council woman and the Belleville City Clerk spoke at one or more of the rallies sponsored by the Metro-East Citizens Group.

(3) Under U.S.S.G. § 5K2.7, defendant's conduct resulted in a significant disruption of a governmental function. This is so even though only three of the criminal cases handled by Judge Cook were granted new trials, two for murder and one for burglary and only because the prosecutor's office did not notify the defendants that Judge Cook was under investigation.

However, many convicted defendants serving time in prison wrote letters to the court asking for their cases to be thrown out, granted new trials, or giving reduced sentences of which only around 40 motions were actually filed and decided; and they were all denied for lack of merit. Despite the limited nature of the remedial relief necessitated by the conduct of Judge Cook during the trials conducted by him, Judge Cook's docket of 250 cases had to be reassigned to another judge and ten to twelve weeks elapsed before a new judge was appointed by the Illinois Supreme Court to fill Judge Cook's vacated position.  Together all of these events show a significant disruption of the judicial function of the court system in St. Clair County, particularly when coupled with the public's perception of Judge Cook's crimes as being, in the words of Judge Baricevic, "another chip in … [the] pile of skepticism" already existing in the public's attitude toward the courts.

     (4) In considering the 18 U.S.C. § 3553(a) sentencing factors, the Court cannot help mentioning Judge Cook's friend, Associate Circuit Judge Joseph Christ, who died of a cocaine overdose while partying with Cook on March 10, 2013.  Cook, undeterred by this reminder of his risky conduct, did not stop using drugs or seek treatment until after his arrest on May 22, 2013. Defendant argues that Cook's continued drug abuse is typical of drug addicts and particularly lawyers who by training and skill are good at fashioning arguments to rationalize their conduct, which was enhanced in Cook's case by the positive feedback he received in regards to his job performance.  Furthermore, since his arrest Mr. Cook has sought and completed an extensive regimen of drug treatment both in-patient and out-patient; and as reported by the head of the Northbound program, "his prognosis for continued sobriety is excellent."  All of that may be true, but for a judge to allow himself to become beholden to

anyone or anything to the extent it causes him to compromise the integrity of his office is "beyond the pale" and cannot be excused where no effort is made by the judge to remediate the enslavement of his drug addiction until after he is caught.  Apparently, adequately motivated, an addict will seek treatment.  The judiciary cannot tolerate the kind of skepticism as to its integrity reportedly expressed in an interview by a member of a public demonstration to the <u>Madison-St. Clair Record</u> that "they could not trust the court system" and "we came to court, and our judge is doing heroin."

In consideration of all of the aggravating and mitigating factors a sentence of 24 months is appropriate as being sufficient but not more than necessary to comply with the purposes of sentencing given the offenses of conviction and the factual circumstances of the Presentence Investigation Report. Defendant's argument that his sentence should be more in line with the typical sentence imposed for simple possession and user in possession of firearms charges brought against other similarly situated defendants who are not judicial officers undervalues the crucial difference between a plumber or other plebeian worker and a judge.  The public has a right to expect more self-discipline and "closer adherence to the law from judges, and when judges fall from grace they should expect to land a little harder than the rest." *Gunby* at 1502.

**<u>Imprisonment</u>**

Pursuant to the Sentencing Reform Act of 1984 and the provisions of 18 U.S.C. § 3553(a), it is the judgment of the Court that the defendant, Michael N. Cook, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 24 months.  This term consists of a term of 24 months on count one and a term of 12 months on count two, both such terms to be served concurrently.

While in the custody of the Bureau of Prisons, it is recommended that the defendant be evaluated for participation in drug abuse treatment and mental health treatment if this is consistent with the Bureau of Prisons policies.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years. This term consists of a term of three years on count one and one year on count two, all such terms to run concurrently. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

**Fine**

IT IS FURTHER ORDERED the defendant shall pay to the United States a fine of $75,583.00 which includes the total sum of $65,583.00 for costs of incarceration and supervision by the Probation Department. Payments of the fine are to be made to the Clerk of the Court. The interest requirement for the fine is waived.

**All criminal monetary penalties are due in full immediately. The defendant shall pay all criminal monetary penalties through the Clerk of Court. If the defendant cannot pay in full immediately, then the defendant shall make payments under the following minimum payment schedule: If the defendant owes any criminal monetary penalties when released from incarceration, then the defendant shall make payments in monthly installments of at least $1,000, or no less than 10% of the defendant's gross earnings, whichever is greater, with payments to commence no later than 30 days after release from imprisonment. Until all criminal monetary penalties are paid in full, the defendant shall notify the Court and this**

**district's United States Attorney's Office, Financial Litigation Unit, of any material changes in the defendant's economic circumstances that might affect the defendant's ability to pay criminal monetary penalties.**  The defendant shall notify this district's United States Attorney's Office, Financial Litigation Unit, of any change of mailing or residence address that occurs while any portion of the criminal monetary penalties remains unpaid.

**Conditions of Supervision**

While on supervision, the defendant shall comply with the standard conditions that have been adopted by this Court and shall comply with the following additional conditions.  If it is determined there are costs associated with any services provided, the defendant shall pay those costs based on a co-payment fee established by the probation office:

The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of commencement of supervision and at least two periodic drug tests thereafter for use of a controlled substance.

The defendant shall participate in a substance abuse treatment program approved by the probation office, which may include substance abuse testing, counseling, Residential Re-entry Center placement, residential or inpatient treatment.

The defendant shall participate in a mental health evaluation and shall follow any recommendations of such and/or shall participate in a mental health program approved by the probation office.

The defendant shall provide the probation office and the Financial Litigation Unit (FLU) of the U.S. Attorney's Office access to any requested financial information. The defendant is advised that the probation office may share financial information with FLU.

The defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without the approval of the probation office so long as there is a balance on the Court-imposed financial obligation.

The defendant shall apply all monies received from any anticipated and/or unexpected financial gains, including any income tax refunds, inheritances, or judgments, to the outstanding Court-ordered financial obligation. The defendant shall immediately notify the probation office of the receipt of any indicated monies.

The defendant shall submit his person, residence, office, or vehicle to a search conducted by the probation office based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

**Special Assessment**

**IT IS FURTHER ORDERED** that the defendant shall pay to the United States a special assessment of **$100 on count one and $25 on count two, for a total of $125, which shall be due immediately.**

The Court recommends that the defendant be housed at a Federal Prison Camp as close to his family as possible that will maximize his exposure to substance abuse and mental health treatment.

Entered this 1st day of April, 2014.

          /s/ JOE BILLY MCDADE
          JOE BILLY McDADE
          United States Senior District Judge